UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| QBE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ESCROW SERVICES OF WASHINGTON LLC ET AL,<br><br>Defendant. | Case No. 2:22-cv-00630-TMC<br><br>ORDER GRANTING DEFAULT JUDGMENT |

## I.     INTRODUCTION

Plaintiff QBE Specialty Insurance Company filed an action seeking declaratory relief regarding a professional liability insurance policy ("QBE Policy") it issued to Defendants Escrow Services of Washington, LLC and Aurora Lynn Rivera. Dkt. 1; Dkt. 11. Neither Defendant has appeared in this action or responded to Plaintiff's motion. Dkt 12; Dkt. 27. The Clerk entered an order of default and QBE has moved for default judgment. Dkt. 28; Dkt. 32. Because QBE has met the standard for default judgment, the Court GRANTS the motion.

## II.  BACKGROUND

### A.  QBE Policy

QBE provided professional liability insurance coverage to Defendants for the 2020–2021 policy period, and Defendants sought to renew their coverage for 2021–2022. Dkt. 11 ¶¶ 23–24. In September 2021, Rivera submitted a Title and Escrow Agents Bond Application (Application). Dkt. 11-1. On questions 41 and 44 of the Application, Rivera stated she was unaware of any (1) "fraudulent or dishonest act of any Named Insured…proposed for coverage" or (2) "circumstances, alleged errors, or omissions, or of any offenses which may reasonably be expected to result in a claim being made against" the applicants. *Id.* at 7.

Based on Rivera's answers, QBE agreed to renew the QBE Policy. Dkt. 11 ¶ 34. On October 1, 2021, QBE issued an insurance binder which confirmed the material terms of the policy and set forth additional requirements for the policy to become effective. Dkt. 11-2. Rivera was required to sign a "No Claims Declaration" (NCD) attesting that there were no material changes in risk since she had first submitted the Application. *Id.* at 2. One week later, Rivera signed the NCD letter and reported no changes to the Application. Dkt. 11-3; Dkt. 33 at 35. Upon review of the Application and NCD letter, QBE formally issued the policy, with an aggregate limit of $500,000, and stated that the premium payment was due no later than October 16, 2021. Dkt. 11 ¶ 40–41; Dkt. 11-2 at 1. QBE's underwriter, Stateside Underwriting Agency, contacted Defendants in the following months, informing them that it would issue a flat cancellation if payment was not made by February 2, 2022. Dkt. 33 at 96–102. Ultimately unable to collect the payment, QBE flat cancelled the policy, which backdated the policy's termination to its time of inception on September 23, 2021. *Id.* at 105.

**B.    DFI Investigation and *Tang* Lawsuit**

During this same period, the Washington Department of Financial Institutions (DFI) had begun investigating Defendants in response to consumer complaints that Escrow Services had failed to distribute escrow funds. *See* Dkt. 11-4 at 2–3. In November 2021, DFI issued Defendants a Temporary Order to Cease and Desist. *See id.* at 3–4. DFI found that around September 15, 2021, Rivera had misappropriated client account funds by wiring $3.5 million—which included $1.5 million from Escrow Service's IOLTA account—to an unknown person or entity purportedly in Turkey. *Id.* at 2. According to the Temporary Order, Rivera had filed a complaint with the Federal Bureau of Investigation (FBI) claiming she had been a victim in an extortion scheme and had wired $3.5 million to help a friend who had been kidnapped. *Id.* When Escrow Services failed to make closing disbursements, Rivera told her clients that her bank account had been hacked. *Id.* Following an investigation, DFI issued a Statement of Charges to Defendants. Dkt. 11-5 at 8–12. Defendants did not request a hearing and failed to respond to the charges. *Id.* at 3. On February 25, 2022, DFI issued its Final Order, which imposed fines, ordered restitution, and revoked Defendants' licenses to work in the escrow industry. *Id.* at 1, 5.

On November 25, 2021, Tang Real Estate sued Defendants, alleging that on multiple occasions, Defendants failed to transfer funds belonging to it and had used funds held in trust with Escrow Services for Rivera's personal benefit. Dkt. 11-6 ¶¶ 3.10–3.12, 3.17. Tang Real Estate further alleged that Defendants failed to follow closing and escrow instructions for several real estate transactions. *Id.* ¶¶ 3.13–3.16. In response to the lawsuit, Defendants sought coverage from QBE under the 2021–2022 policy, while acknowledging that Rivera misappropriated client funds to save her friend. Dkt. 33 at 12. QBE investigated the claim and determined that coverage was precluded, but it agreed to fund the defense in the *Tang* lawsuit under a reservation of rights. *See id.* at 126–145.

ORDER GRANTING DEFAULT JUDGMENT - 3

On May 10, 2022, QBE filed this lawsuit seeking a declaratory judgment that (1) the QBE Policy was not in effect when the *Tang* lawsuit was filed; (2) QBE has no duty to defend, indemnify, or pay Defendants relating to the *Tang* litigation; and (3) QBE may withdraw from funding the *Tang* defense. Dkt. 32 at 1–2. QBE also seeks reimbursement of $36,469.32 for all fees and costs it has expended for the defense. *Id.* at 2. Defendants were served on September 2, 2022, but they failed to appear or file a responsive pleading. Dkt. 12. The case was stayed during Defendant Rivera's bankruptcy proceedings. Dkt. 16. After the stay was lifted, QBE moved for default and the Clerk entered an order of default on July 9, 2024. Dkt. 24; Dkt. 28. On August 30, 2024, QBE moved for default judgment. Dkt. 32.

### III.   DISCUSSION

**A.   Jurisdiction**

The Court first examines its jurisdiction when evaluating a motion for default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has diversity jurisdiction here because the parties are citizens of different states, and the amount in controversy—the value of the policy—exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1); Dkt. 11 ¶¶ 12–14; Dkt. 11-2 at 1. The Court also has personal jurisdiction over Defendants. Escrow Services is a limited liability company with its principal place of business in Washington state and Rivera resides in Washington state. Dkt. 12; Dkt. 11 ¶¶ 13–14.

**B.   Legal Standard for Default Judgment**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default judgment, courts take "the well-pleaded factual allegations in the complaint as true, except those relating to the amount of damages." *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017)

(internal citations and quotation marks omitted); Fed. R. Civ. P. 8(b)(6). Courts do not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Courts weigh the following factors ("*Eitel* factors") in deciding motions for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (discussing how district courts "weigh" the *Eitel* factors). Entry of default judgment is left to a court's sound discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). If a court determines that default judgment is appropriate, it then determines the relief that should be given. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

**C.    QBE is entitled to default judgment.**

The Court agrees with QBE that the *Eitel* factors favor entry of default judgment against all Defendants. *See* Dkt. 32 at 13.

*1.    Possibility of prejudice to QBE*

QBE filed this suit in May 2022, and Defendants have neither responded nor defended in this action. Dkt. 1; Dkt. 28. Without entry of default judgment, QBE would be prejudiced because it would be left with no legal remedy. *See Principal Life Ins. Co. v. Hill*, No. C21-1716 MJP, 2022 WL 2718087, at *2 (W.D. Wash. July 13, 2022) ("Plaintiff will be prejudiced by not having a decision on the merits of its claim for recission of the Policy."); *Curtis v. Illumination*

ORDER GRANTING DEFAULT JUDGMENT - 5

*Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). QBE would be denied recourse for a final determination of its defense and indemnity obligations, which would be prejudicial given that QBE has already been funding the defense in the underlying *Tang* lawsuit. Dkt. 33 at 126–145; *see Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1317–18 (D. Nev. 2013) (citation omitted) ("The first *Eitel* factor weighs in favor of granting plaintiff's motion because plaintiff will be denied recourse for a final determination of its defense and indemnity obligation."); *Am. Com. Ins. Co. v. Schierman*, No. C12-0195JLR, 2012 WL 13018750, at *3 (W.D. Wash. June 25, 2012) ("[T]here is great risk of prejudice to the plaintiff if the motion is denied, because this action is the only means by which [the insurer] can establish that it has no duty to defend or indemnify [the insured]."). The first *Eitel* factor favors default judgment.

   2.  *Merits of claim and sufficiency of complaint*

  The second and third *Eitel* factors, concerning the merits of the plaintiff's claim and the sufficiency of their complaint, are "often analyzed together." *See, e.g.*, *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal 2002)). These two factors support default judgment when the plaintiff's complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted); *see Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Courts cannot enter default judgment if the complaint fails to state a claim. *See Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004).

  First, QBE seeks entry of default judgment on its claims that the QBE Policy was not in effect when the *Tang* lawsuit was filed and it therefore has no duty to defend, indemnify, or otherwise pay Defendants in that suit. Dkt. 32 at 1.

"An insurance policy is a contract." *Santiago v. GEICO Advantage Ins. Co.*, No. C22-1370RSL, 2023 WL 8717155, at *2 (W.D. Wash. Dec. 18, 2023), (citing RCW 48.01.040). A valid insurance contract requires three elements: an offer, acceptance, and consideration. *Armed Citizens' Legal Def. Network v. Wash. State Ins. Comm'r*, 28 Wn. App. 2d 64, 75, 534 P.3d 439 (2023). While the offer and acceptance elements were met when Defendants submitted the Application to renew their insurance coverage and QBE formally issued the Policy, the Court agrees with QBE that the consideration element was not satisfied because the premium was never paid. *See* Dkt. 32 at 14. As a result, a valid insurance contract was not formed.

QBE has presented evidence showing that Statewide contacted Escrow Services' broker several times from October 1, 2021 to January 27, 2022 seeking payment, and informed Defendants that continued nonpayment would result in a flat cancellation of the QBE Policy. *See* Dkt. 33 at 96–106. QBE never received payment, and it issued a flat cancellation that withdrew the Policy effective September 23, 2021, the first day it was set to start. *See id.* at 104–106. Therefore, when Defendants tendered a claim to QBE requesting coverage for the *Tang* lawsuit in December 2021, there was no active policy. *See id.* at 12. QBE has sufficiently stated claims that it has no duty to defend or indemnify Defendants because there was no effective policy when Defendants filed their claim. Thus, the Court need not address QBE's arguments seeking rescission of the Policy. *See* Dkt. 32 at 15.

Second, QBE seeks entry of default judgment on its claim that it may withdraw from providing Defendants with a defense in the *Tang* lawsuit. Dkt. 32 at 2. QBE advanced funds to Defendants for the *Tang* lawsuit under a full reservation of rights during the pendency of this action. Dkt. 33 at 136 ("[QBE] will, nonetheless, provide a defense, subject to a full and complete reservation of rights while its Declaratory Judgment Action is pending."). Because the Court finds that Defendants were not covered by the QBE Policy when they filed their claim,

QBE may withdraw from providing the defense. Therefore, the second and third *Eitel* factors favor entering default judgment on all claims.

3. *The sum of money at stake*

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77. The Court assesses whether the amount of money sought is proportional to the harm caused by Defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). QBE seeks a total of $36,469.32 in reimbursement for defense costs it advanced to Defendants. Dkt. 32 at 28. The requested amount is not unreasonable relative to the scale and seriousness of the conduct alleged, as QBE is seeking to recoup defense costs for claims not covered by its policy. Dkt. 33 at 39; *see Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. California v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (finding that the amount of liquidated damages, unpaid contributions, and attorney's fees were appropriate because they were supported by sufficient evidence provided by the plaintiffs). This factor also supports default judgment.

4. *The possibility of dispute about material facts*

As for the fifth *Eitel* factor, the Court finds it unlikely that any disputes of material fact remain. Once default is entered, well-pleaded factual allegations in the complaint are taken as true except for allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. QBE's exhibits support the allegations in the complaint. *See* Dkt. 11. This factor favors default judgment.

### 5. *Whether default was due to excusable neglect*

Under the sixth *Eitel* factor, the Court examines whether Defendants' default resulted from excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. QBE has provided evidence that Defendants were served, *see* Dkt. 12, and there is no evidence in the record to support a finding that Defendants' failure to respond stems from excusable neglect. Accordingly, the Court concludes that the sixth *Eitel* factor supports default judgment.

### 6. *Policy favoring decisions on the merits*

Finally, the seventh *Eitel* factor favors that courts decide cases "upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But when a defendant fails to appear or defend themselves in an action, the policy favoring decisions on the merits is not dispositive. *See PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, Federal Rule of Civil Procedure 55 allows courts to issue a default judgment if a defendant fails to appear or defend. *Id*. The Court finds that the seventh *Eitel* factor does not weigh against default judgment here.

### B.  **QBE is entitled to remedies.**

Since all *Eitel* factors favor entry of default judgment, the Court now turns to remedies. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. The Court does not consider defaulting defendants to have admitted the facts alleged concerning damages. *Id*. at 917. Instead, plaintiffs moving for default judgment should submit "a declaration and other evidence establishing [their] entitlement to a sum certain and to any nonmonetary relief sought." Local Rules W.D. Wash. 55(b)(2).

QBE has provided nine invoices totaling $36,469.32 showing payments made to Lewis Brisbois Bisgaard & Smith LLP for Defendants' legal defense in the *Tang* lawsuit. Dkt. 34 at 4–12. The Court finds the sum to be supported by the Declaration of Nhataly Vu and the attached exhibits, and accordingly grants the damages sought. *See* Dkt 32; 34.

## IV.     CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiff QBE's motion for default judgment (Dkt. 32) and DECLARES as follows:

1. The professional liability coverage for Defendants under QBE Policy No. STA-10595-02 is declared void ab initio, because it was flat-cancelled and therefore never in effect;

2. QBE does not owe Escrow Services of Washington, LLC and Aurora Lynn Rivera a defense in the King County Superior Court Lawsuit styled *Tang Real Estate Investments Corp. v. Escrow Services of Wash. et al.*, Case No. 21-2-15612-2;

3. QBE is entitled to reimbursement from Defendants in the amount of $36,469.32. The Clerk is directed to enter judgment against Defendants and in favor of QBE for the amount set forth above.

Dated this 22nd day of October, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING DEFAULT JUDGMENT - 10